## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## CENTRAL DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 7 |
| | ) | Case No. 11-43709-MSH |
| CHUNG-I LIANG AND YU-CHI CHAO | ) | |
| | ) | |
| Debtors | ) | |
| | ) | |

## MEMORANDUM OF DECISION ON TRUSTEE'S OBJECTION TO DEBTORS' CLAIM OF EXEMPTION IN LIFE INSURANCE

David M. Nickless, the chapter 7 trustee in this case, has objected to the claim of exemption of the debtors, Chung-I Liang and Yu-Chi Chao, in a life insurance policy owned by the debtor-wife, Yu-Chi Chao. On schedule B accompanying their bankruptcy petition, in which the debtors listed their personal property assets, they identified the life insurance policy as "Met Life flex premium multifunded life insurance [policy number] 200104131 UM" with a cash value of $10,132.39. The parties have stipulated that the beneficiaries under the policy are the debtors, Mr. Liang and Ms. Chao, and that the insured is their minor child.

On the original version of schedule C accompanying their bankruptcy petition, which sets forth the assets the debtors claim as exempt, the debtors listed the policy, along with two other life insurance policies, as fully exempt under the federal exemption scheme of § 522(d) of the Bankruptcy Code, (11 U.S.C. § 101 *et seq*). Subsequently they amended schedule C to exempt the value of the three policies under Massachusetts law, specifically Mass. Gen. Laws ch. 175, § 126.[1] The trustee objected to the debtors' claims of exemption in the three life insurance policies but

---

[1] Massachusetts debtors may, pursuant to Bankruptcy Code § 522(b), elect either the federal bankruptcy exemptions set forth in § 522(d) *or* the exemptions provided by state law together with those provided by federal non-bankruptcy and local law.

prior to the hearing on the objection the debtors filed a second-amended schedule C to claim all

three policies as exempt under *both* Mass. Gen. Laws ch. 175, § 125 and § 126. At the hearing on

the trustee's objection, the trustee requested and was granted time to file a memorandum of law, in

which he proposed to 1) object to the second-amended schedule C as necessary and 2) brief the

relevant issues of law. The trustee subsequently filed a memorandum of law in which he objected

to the second-amended schedule C but only as to policy number 200104131 UM, conceding that

the other two life insurance policies were now properly exempted.

In order to understand the dispute between the trustee and the debtors it is necessary to

examine with some care the statutes upon which the debtors base their exemption claim.

Mass. Gen. Laws ch. 175, § 125 provides in relevant part:

> If a policy of life or endowment insurance is effected by any person on his own life
> or on another life, in favor of a person other than himself having an insurable
> interest therein, the lawful beneficiary thereof, other than himself or his legal
> representatives, shall be entitled to its proceeds against the creditors and
> representatives of the person effecting the same, whether or not the right to change
> the named beneficiary is reserved by or permitted to such person; provided, that,
> subject to the statute of limitations, the amount of any premiums for said insurance
> paid in fraud of creditors, with interest thereon, shall enure to their benefit from the
> proceeds of the policy; but the company issuing the policy shall be discharged of all
> liability thereon by payment of its proceeds in accordance with its terms, unless
> before such payment the company shall have written notice, by or on behalf of a
> creditor, of a claim to recover for certain premiums paid in fraud of creditors, with
> specification of the amount claimed. No court, and no trustee or assignee for the
> benefit of creditors, shall elect for the person effecting such insurance to exercise
> such right to change the named beneficiary.

Mass. Gen. Laws ch. 175, § 126 concerns life insurance policies where the beneficiary is a married

woman and provides:

> Every policy of life or endowment insurance made payable to or for the benefit of a
> married woman, or after its issue assigned, transferred or in any way made payable
> to a married woman, or to any person in trust for her or for her benefit, whether
> procured by herself, her husband or by any other person, and whether the
> assignment or transfer is made by her husband or by any other person, and whether

2

or not the right to change the named beneficiary is reserved by or permitted to the person effecting such insurance, shall enure to her separate use and benefit, and to that of her children, subject to the provisions of section one hundred and twenty-five relative to premiums paid in fraud of creditors and to sections one hundred and forty-four to one hundred and forty-six, inclusive. No court, and no trustee or assignee for the benefit of creditors, shall elect for the person effecting such insurance to exercise such right to change the named beneficiary.

The overriding purpose of this statutory scheme is to protect the interests of life insurance beneficiaries from the creditors of the person who purchased or owns the policy. This purpose extends to the cash surrender value of whole-life insurance policies. "Massachusetts courts have concluded that in order to fully protect a beneficiary's interest in a life insurance policy, §§ 125 and 126 should be construed to exempt the cash surrender value held by the owner." *In re Sloss*, 279 B.R. 6, 15 (Bankr. D. Mass. 2002) (citing *Rosenberg v. Robins*, 289 Mass. 402, 194 N.E. 291 (Mass. 1935); *In re CRS Steam, Inc.*, 217 B.R. 365 (Bankr. D. Mass. 1998)).

For a policy to qualify for protection under § 125, the person who effects the policy, who I take to mean the person who originally purchased it (typically the owner), may never be the beneficiary. Mass. Gen. Laws ch. 175, § 125 ("If a policy of life or endowment insurance is effected by any person on his own life or on another life, in favor of a person *other than himself* having an insurable interest therein, the lawful beneficiary thereof, *other than himself or his legal representatives*, shall be entitled to its proceeds against the creditors and representatives of the person effecting the same . . . .") (emphasis added). Thus under § 125 if the policy effectuator and beneficiary are the same, the value of the policy is not exempt from the effectuator's creditors. This makes sense.

Section 126, on the other hand, which applies to married women only, is broader. Even if the married woman is the "procurer" of the policy, which I take to mean the effectuator, she may also be the beneficiary and the value of the policy is still exempt. Mass. Gen. Laws ch. 175, § 126

3

("Every policy of life or endowment insurance made payable to or for the benefit of a married

woman, or after its issue assigned, transferred or *in any way made payable to a married woman*, or

to any person in trust for her or for her benefit, whether procured by herself, her husband or by any

other person . . . .") (emphasis added). This makes less sense without a bit of historical perspective,

which will be provided below.

Unlike § 125, which explicitly applies to insurance policies on the life of anyone, § 126 is

silent as to who may be the insured under the policy. This omission gives rise to the present

dispute. The trustee maintains that § 126 applies only to insurance policies in which a married

woman is the owner or beneficiary and her spouse is the insured. Here, while the debtor, Ms. Chao,

is the owner and a co-beneficiary of the policy, the insured is her child. This, the trustee argues,

takes the policy out of the protection of § 126. The debtors, on the other hand, assert that § 126

protects a life insurance policy for the benefit of a married woman regardless of who is the insured.

Because § 126 does not specify who may be the insured, it is necessary to look beyond the

statutory text for guidance. *See EMC Corp. v. Comm'r of Revenue*, 433 Mass. 568, 570, 744

N.E.2d 55 (Mass. 2001) (citing *Pac. Wool Growers v. Comm'r of Corps. & Taxation*, 305 Mass.

197, 199, 25 N.E.2d 208 (Mass. 1940)). The Massachusetts Supreme Judicial Court offers a

sensible formula for statutory interpretation in the context of the present dispute:

> The imperfections of language to express intent often render necessary further
> inquiry.   Statutes are to be interpreted, not alone according to their simple, literal
> or strict verbal meaning, but in connection with their development, their
> progression through the legislative body, the history of the times, prior legislation,
> contemporary customs and conditions and the system of positive law of which they
> are part, and in the light of the constitution and of the common law, to the end that
> they be held to cover the subjects presumably within the vision of the Legislature
> and, on the one hand, be not unduly constricted so as to exclude matters fairly
> within their scope, and, on the other hand, be not stretched by enlargement of

4

signification to comprehend matters not within the principle and purview on which
they were founded when originally framed and their words chosen.

*Pac. Wool Growers*, 25 N.E.2d at 209. The SJC's guidance is especially apt where my task is to

predict how the SJC would interpret Mass. Gen. Laws ch. 175, § 126 if it had been called upon to

resolve this matter. When the state's highest court has not addressed an issue, the following rule

applies:

> Like a federal court sitting in diversity, a Bankruptcy Court ruling on an issue of
> state law must rule as it believes the highest court of the state would rule. When the
> highest court has not addressed the issue, the Bankruptcy Court should not regard
> lower court rulings on the issue as dispositive. Rather, it should attempt to predict
> what the highest court would do and to that end should accord proper regard to
> decisions of other courts of that state.

*In re Miller*, 113 B.R. 98 (Bankr. D. Mass. 1990) (citing *Comm'r v. Estate of Bosch*, 387 U.S. 456,

465 (1967)).

I begin, therefore, at the beginning. In 1840 New York became the first state in the nation

to enact a law permitting a married woman to purchase insurance on her husband's life with the

proceeds being protected from her husband's creditors.[2]   Prior to that time, a married woman in

New York, as elsewhere,[3] was bound by the common law doctrine of coverture:

> . . . Under coverture, as explained by Blackstone, "the very being or legal
> existence of the woman is suspended during the marriage, or at least is incorporated

---

[2] Mary L. Heen, *From Coverture to Contract: Engendering Insurance on Lives*, 23 YALE J. LAW
& FEMINISM 335, 345 (2011) (citing 1840 N.Y. LAWS 59); *see also* Richard H. Chused, *Late
Nineteenth Century Married Women's Property Law: Reception of the Early Married Women's
Property Acts by Courts and Legislatures*, 29 AM. J. LEGAL HIST. 3, 4 n.3 (1985) ("It is now
generally agreed that the first wave of married women's acts were adopted in part because of the
dislocations caused by the Panic of 1837.").

[3] The doctrine of coverture was not unique to states on the eastern seaboard; in fact, "literally
every state radically altered coverture in the third quarter of the nineteenth century." Carole
Shammas, *Re-Assessing the Married Women's Property Acts*, 6 J. WOMEN'S HIST. 9, 11-12
(1994).

and consolidated into that of the husband." The common law fiction of "marital unity" thus impaired a married woman's separate capacity to contract, to convey or devise property, and to file suit.   Under the law of agency, a wife might be permitted to enter into certain types of contracts as her husband's agent. However, a married woman in her own capacity could not purchase life insurance on her own or her husband's life.

Under the common law, all of a married woman's personal property and the management of her real property went to her husband. . . . Although a husband could take out a life insurance policy on his own life and designate his wife or children as the beneficiaries, the policy was considered part of the husband's estate and thus could be reached by the husband's creditors.

Unmarried women, by contrast, were treated under the common law category of *feme sole* rather than *feme covert*, and as such, were "unconstrained by coverture's strictures" and inhabited a space largely "outside of the regulatory framework of marriage law."

Mary L. Heen, *From Coverture to Contract: Engendering Insurance on Lives*, 23 YALE J. LAW & FEMINISM 335, 345-47 (2011).

In 1844 Massachusetts, following New York's lead, enacted its own married women's insurance law.[4]  The statute applied to any policy "on the life of any person" for the benefit of a married woman, whether "effected by herself or her husband, or by any other person on her behalf." St. 1844, c. 82, § 1. The New York statute limited a married woman's ability to contract for insurance to policies on the life of her husband. *See* 1840 N.Y. LAWS 59; *Canterbury v. Nw. Mut. Life Ins. Co.*, 124 Wis. 169, 102 N.W. 1096, 1099 (Wis. 1905). The Massachusetts law in its original form enabled a married woman to benefit from a policy "on the life of *any* person." St. 1844, c. 82, §§ 1-3 (emphasis added).

The 1844 Massachusetts statute underwent a series of revisions and re-enactments, including a seven-year period between 1887 and 1894 when no separate married women's statute

---

[4] *See* Heen, *supra* note 2, at 345 (citing 1840 N.Y. LAWS 59).

was in effect, until settling on its present iteration in 1928.[5] The current version of the statute,

unlike its 1844 progenitor and a slightly altered 1882 version, does not contain the phrase "on the

life of any person" or any language of similar import. It must be assumed that the omission was

purposeful. *See Leary v. Contributory Ret. Appeal Bd.*, 421 Mass. 344, 348, 657 N.E.2d 224, 227

(Mass. 1995).

      In *Bailey v. Wood*, 202 Mass. 549, 89 N.E. 147 (Mass. 1909), the SJC articulated the

overarching legislative purpose for the married women's insurance law in effect at that time, St.

1894, c. 522, § 73. The relevant provisions of that statute and the current statute are word-for-word

identical. The SJC observed:

> Since 1844 with the exception of the seven years from 1887 to 1894, if they can be
> called an exception, it has been the policy of the commonwealth to enable the
> husband and father to provide by insurance *on his life* for his wife and children
> subject only to have premiums paid in fraud of creditors within the statutory period
> of limitation inure to their benefit out of the proceeds of the insurance and since
> 1894 with the possible exception aforesaid the law has included assignments from
> the husband to the wife of policies issued to the husband. This has been regarded as
> a wise and humane policy and the constitutionality of the legislation has never been
> questioned and we do not see how it can be successfully. "It proceeds," as has been
> said, "upon the theory that the interest of a man's wife and children in his life, and
> his duty to make reasonable provisions for their support, are not wholly subordinate
> to the claims of his creditors; and that he may make an irrevocable settlement of a
> policy of insurance *on his life* for the benefit of his family." *Gould v. Emerson*, 99
> Mass. 154, 96 Am. Dec. 720. *See, also, Washington Central Bank v. Hume,* 128 U.
> S. 195, 9 Sup. Ct. 41, 32 L. Ed. 370.

202 Mass. at 552 (emphasis added).

      The SJC reiterated its understanding of the nature of the law in a companion case of the

same name, *Bailey v. Wood*, 202 Mass. 562, 89 N.E. 149 (Mass. 1909):

---

[5] For a discussion of the early statutory history of Mass. Gen. Laws ch. 175, § 126 see *Bailey v.
Wood*, 202 Mass. 549, 89 N.E. 147 (1909), and *Bailey v. Wood*, 202 Mass. 562, 89 N.E. 149
(1909).

> We are of opinion that it was the purpose of this legislation to lay down plain and simple rules easily followed, and that the true intent and meaning of the statute was in the first place finally to establish the general right of the wife to the proceeds of insurance *upon the life of her husband*, whether the policy was originally for her benefit or whether, being originally for the benefit of the husband and his estate it was afterwards transferred to her, and whether or not the husband was insolvent at the time of the transfer, and in the second place to establish the right of the creditor to have the benefit of the premiums paid by the husband when in[s]olvent, irrespective of the question of his duty to support his wife.

*Id.* at 570-71 (emphasis added).

The SJC's statement of the policy to be served by married women's insurance laws supports the view that the later versions of the Massachusetts law, which omit phrases like "on the life of any person" found in the 1844 original, were intended to narrow protection for married women only to policies insuring the lives of their husbands.[6]

Apart from the SJC's policy analysis in the two *Bailey* decisions, limiting the scope of § 126 in this way fits comfortably within its historical context reflecting the early attempts to erode the doctrine of coverture. Furthermore, viewing a narrowly construed § 126 through the prism of § 125, which sensibly excludes from its protection insurance policies where the effectuator-owner and the beneficiary are the same person, avoids having the exception for married women in § 126 swallow the rule of § 125. Interpreting § 126 to apply to policies where not only the married

---

[6] While § 126 may be ripe for a claim of unconstitutionality as violative of the equal protection clauses of the U.S. Constitution and the Massachusetts Constitution, *see In re Sloss*, 279 B.R. 6, 15 (Bankr. D. Mass. 2002); *In re Chevalier*, 330 B.R. 21, 26 n.6 (Bankr. D. Mass. 2005), such a claim is not properly before me. Following the first amendment to schedule C and the trustee's objection thereto, the debtors filed a "Notice of Claim of Unconstitutionality" as to § 126. One week after filing the Notice, however, the debtors filed a motion to amend schedule C in which they stated that they "deem it preferable to file this amendment to mounting a constitutional challenge to section 126." Docket #20. Thus the debtors waived their constitutional challenge and, indeed, they did not raise this argument again in any further pleading or hearing.

8

woman's spouse but *anyone* is the insured would expand exponentially the protection for married couples who seek to shelter their assets from creditors. This is a result I do not believe is intended by the statute. "Courts must ascertain the intent of a statute from all its parts and from the subject matter to which it relates, and must interpret the statute so as to render the legislation effective, consonant with sound reason and common sense." *DiGiacomo v. Metro. Prop. & Cas. Ins. Co.*, 66 Mass. App. Ct. 343, 346, 847 N.E.2d 1107, 1110 (Mass. App. Ct. 2006).

For these reasons I find that the insurance policy of Ms. Chao on the life of her child is not exempt under Mass. Gen. Laws ch. 175, § 126.

The debtors' second-amended schedule C listed the life insurance policy as exempt under both §§ 125 and 126. Having concluded that § 126 is inapplicable, it is necessary to consider whether the policy may be exempt under § 125.[7] By its terms § 125 does not protect policies where the effectuator and beneficiary are one and the same. Here, it is likely that the effectuator of the policy was Ms. Chao and it has been stipulated that the beneficiaries are Ms. Chao and her husband, Mr. Liang. Before determining the applicability of § 125, however, the parties shall be afforded the opportunity to supplement the record. The parties shall submit memoranda within 30 days of the date of this decision as to the applicability of § 125 to the policy at issue. They shall

---

[7] The trustee's objection as set forth in his memorandum of law objected to the debtors' claim of exemption pursuant to Mass. Gen. Laws ch. 175, § 125 and §126.

also submit within that time affidavits or a stipulation addressing who effected the policy and

attaching a complete copy of the policy with all riders and endorsements.

A separate order shall enter.

At Worcester, Massachusetts this 26th day of June, 2012.

By the Court,

_____
Melvin S. Hoffman
U.S. Bankruptcy Judge

Counsel Appearing:     David M. Nickless
                       Nickless & Philips, P.C.
                       Fitchburg, MA
                       for the trustee

                       Walter C. Oney, Jr., Esq.
                       Fitchburg, MA
                       for the debtors